1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                           SOUTHERN DISTRICT OF CALIFORNIA

10   ROBERT DANIEL PERRY,              )   Civil No. 09cv622 LAB (RBB)
                                       )
11                Plaintiff,           )   **REPORT AND RECOMMENDATION**
                                       )   **GRANTING DEFENDANTS' MOTION TO**
12   v.                                )   **DISMISS AND ORDER DENYING**
                                       )   **MOTION TO STRIKE [DOC. NO. 35]**
13   GLORIA GARCIA, D. BROWN, E.       )
     DUARTA, M. WIERZBICKY, J.         )
14   VALDEZ, R. JACKSON, G.            )
     PEDERSON, E. CONTRERAS, C.        )
15   FERNANDEZ,                        )
                                       )
16                Defendants.          )
     _____)

17

18        Plaintiff Robert Daniel Perry, a state prisoner proceeding pro

19   se and in forma pauperis, filed a Complaint on March 25, 2009,

20   pursuant to 42 U.S.C. § 1983 [doc. no. 1].[1]  A summons was returned

21   unexecuted for Defendants Gloria Garcia, C. Fernandez, R. Jackson,

22   J. Valdez, and E. Contreras [doc. nos. 14, 16-19].  Defendants M.

23   Wierzbicky, D. Brown, E. Duarta, and G. Pederson waived service of

24   the summons [doc. nos. 25-28].  Plaintiff has filed several Motions

25   for Default Judgment against Defendants, which were all denied or

26

27   _____

28        [1] Because Perry's Complaint is not consecutively paginated,
     the Court will use the page numbers assigned by the electronic case
     filing system.

                                        1

rejected by United States District Judge Larry Allen Burns [doc. nos. 13, 15, 20, 23, 29, 31-34, 37-40, 46, 49].

On February 16, 2010, the four appearing Defendants filed a Motion to Dismiss with a Memorandum of Points and Authorities in Support of the Motion, an attached exhibit, and Declarations from J. Walker, D. Foston, and G. Pederson and exhibits [doc. no. 35]. The next day, the Court issued a <u>Klingele/Rand</u> Notice advising Perry of Defendants' pending Motion to Dismiss for failure to exhaust his administrative remedies and allowing him time to present any evidence demonstrating exhaustion [doc. no. 36]. Plaintiff's Opposition to Defendants' Motion to Dismiss, titled "Plaintiff Exhausted all of his Administrative Remedies," was filed on March 10, 2010 [doc. no. 41].

On March 22, 2010, Defendant E. Contreras filed a Joinder to Motion to Dismiss [doc. no. 42]. The Court issued a second <u>Klingele/Rand</u> Notice and gave Perry additional time to oppose the Motion and submit evidence [doc. no. 44]. Plaintiff's second Opposition, also titled "Plaintiff Exhausted All of his Administrative Remedies," was filed on March 26, 2010 [doc. no. 45].

The Court finds Defendants' Motion suitable for decision without oral argument pursuant to Civil Local Rule 7.1(d)(1). The Court has reviewed the Complaint, Defendants' Motion to Dismiss and attachments, Defendant Contreras's Joinder, and Plaintiff's Oppositions. For the reasons set forth below, the district court should **GRANT** Defendants' Motion to Dismiss.

# I. FACTUAL BACKGROUND

Plaintiff is currently a prisoner at the Folsom State Prison ("Folsom"); however, the allegations in his Complaint arise from events that occurred while he was incarcerated at Richard J. Donovan Correctional Facility ("Donovan") between April 2 and June 10, 2008.  (Compl. 1.)

In count one, Perry argues that on April 2, 2008, he completed an emergency dental request form.  (Id. at 4.)  He explains that he "ran into the dentist office demanding treatment" due to serious dental pain.  (Id.)  The dentist refused to treat him so he "made so much noise that Correctional Sergeant [Brown], Correctional Officer [Duarta] and Correctional Officer [Jackson] rushed [him] to the ground and put [him] in handcuffs."  (Id.)  Then Duarta and Jackson beat and kicked him while Brown yelled racial obscenities.  (Id.)  Perry contends that he threatened to sue Defendants for "$100 million for assault and battery, a violent hate crime and medical negligence."  (Id.)  He claims to have been taken to the administrative segregation unit where he was beaten and kicked again.  (Id.)  After two days in the "AD/SEG hospital," Perry was "blindfolded and put in a wheel chair and taken back to [his] cell."  (Id.)  He was told to drop his lawsuit and not to talk about the incident or the Defendants would kill him.  (Id.)

In count two, Plaintiff alleges that on April 17, 2008, an announcement was made over the loud-speaker for him to report to the main office.  (Id. at 5.)  Upon his arrival, Defendant Brown placed him in handcuffs and leg restraints; then Brown, Wierzbicky, and Jackson brought him into a room where Defendants Valdez, Contreras, and Garcia were waiting.  (Id.)  Warden Garcia told

Perry to drop his lawsuit or "[he's] a dead man." (Id.)  Perry responded with profanity, and Garcia slapped him. (Id.)  Plaintiff explained that he needed to see a dentist due to severe pain and mouth disease, and he was going to sue "for $100 million for conspiracy to cover up [his] lawsuit, medical malpractice, medical negligence, cruel and unusual punishment and [he explained that he] had already started [his] lawsuit." (Id.)  Then, Defendants Brown, Jackson, and Wierzbicky beat and kicked him. (Id.)  Plaintiff alleges that the beating continued for fifteen minutes until Brown took him back to the main office, wrote a rules violation report against him, removed the restraints, and sent Perry back to his cell. (Id.)

In count three, Perry asserts that on June 10, 2008, his gums were infected and bleeding, so he went to the dentist's office and demanded treatment. (Id. at 6.)  The dentist and his staff refused to treat him, and Defendants Wierzbicky, Jackson, Duarta, and Brown placed him in handcuffs and leg restraints. (Id.)  Lieutenant Pederson ordered Defendants to take Plaintiff to his cell block where they placed him in "a cage." (Id.)  Defendants gathered his legal and personal property. (Id.)  They put Perry in the administrative segregation unit where Defendants beat and kicked him while Brown yelled racial obscenities at Perry. (Id.)  Plaintiff contends that Brown hit him on the head and neck with a four-foot stick for about fifteen minutes until the stick broke. (Id.)  Defendants continued to beat and kick him for another thirty minutes to an hour. (Id. at 6-7.)  Each Defendant kicked and spat on him; then Defendants Pederson, Wierzbicky, Jackson, Duarta, and Brown yelled racial profanities at Perry while warning him not to

sue the prison.  (<u>Id.</u> at 7.)  Lieutenant Pederson told the other

Defendants, "Now let's go destroy his property."  (<u>Id.</u>)  Plaintiff

never saw his property again.  (<u>Id.</u>)  He was placed in the

administrative segregation unit's hospital for two weeks until he

was released by the doctor on June 24, 2008.  (<u>Id.</u>)  Upon his

release, Perry tried to commit suicide.  (<u>Id.</u>)  He was taken back

to the hospital and was provided sleeping medication.  (<u>Id.</u>)  When

he awoke, he had been transferred to Folsom.  (<u>Id.</u>)

## II.  LEGAL STANDARDS APPLICABLE TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.  Rule 12(b)(6) Motions to Dismiss

A motion to dismiss for failure to state a claim pursuant to

Federal Rule of Civil Procedure 12(b)(6) tests the legal

sufficiency of the claims in the complaint.  <u>See</u> <u>Davis v. Monroe</u>

<u>County Bd. of Educ.</u>, 526 U.S. 629, 633 (1999).  "The old formula —

that the complaint must not be dismissed unless it is beyond doubt

without merit — was discarded by the <u>Bell Atlantic</u> decision [<u>Bell</u>

<u>Atl. Corp. v. Twombly</u>, 550 U.S. 544, 563 n.8 (2007)]."  <u>Limestone</u>

<u>Dev. Corp. v. Vill. of Lemont</u>, 520 F.3d 797, 803 (7th Cir. 2008).

A complaint must be dismissed if it does not contain "enough

facts to state a claim to relief that is plausible on its face."

<u>Bell Atl. Corp.</u>, 550 U.S. at 570.  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the

misconduct alleged."  <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S.Ct.

1937, 1949 (2009).  The court must accept as true all material

allegations in the complaint, as well as reasonable inferences to

be drawn from them, and must construe the complaint in the light

most favorable to the plaintiff.  Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) (citing Karam v. City of Burbank, 352 F.3d 1188, 1192 (9th Cir. 2003)); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995); N.L. Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

The test is not whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Bell Atl. Corp. v. Twombly, 550 U.S. at 563 n.8.  A dismissal under Rule 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001) (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).

The court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff." Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); see Halkin v. VeriFone, Inc., 11 F.3d 865, 868 (9th Cir. 1993); see also Cholla Ready Mix, 382 F.3d at 973 (quoting Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994)) (stating that on Rule 12(b)(6) motion, a court "'is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged[]'").  "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

When resolving a motion to dismiss for failure to state a claim, courts may not generally consider materials outside the pleadings. Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); Jacobellis v. State Farm Fire & Cas. Co., 120 F.3d 171, 172 (9th Cir. 1997); Allarcom Pay Television Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). "The focus of any Rule 12(b)(6) dismissal . . . is the complaint." Schneider, 151 F.3d at 1197 n.1. This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6). Id. (citing Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993).

"When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper . . . ." Parks Sch. of Bus., 51 F.3d at 1484 (citing Cooper v. Bell, 628 F.2d 1208, 1210 n.2 (9th Cir. 1980)). The court may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading . . . ." Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002); Stone v. Writer's Guild of Am. W., Inc., 101 F.3d 1312, 1313-14 (9th Cir. 1996).

These Rule 12 (b)(6) guidelines apply to Defendants' Motion to Dismiss.

**B.   Standards Applicable to Pro Se Litigants**

Where a plaintiff appears in propria persona in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. Karim-Panahi v. Los

1   _Angeles Police Dep't_, 839 F.2d 621, 623 (9th Cir. 1988).  The rule

2   of liberal construction is "particularly important in civil rights

3   cases."  _Ferdik v. Bonzelet_, 963 F.2d 1258, 1261 (9th Cir. 1992).

4   In giving liberal interpretation to a pro se civil rights

5   complaint, courts may not "supply essential elements of claims that

6   were not initially pled."  _Ivey v. Bd. of Regents of the Univ. of_

7   _Alaska_, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory

8   allegations of official participation in civil rights violations

9   are not sufficient to withstand a motion to dismiss."  _Id._; _see_

10  _also_ _Jones v. Cmty. Redev. Agency_, 733 F.2d 646, 649 (9th Cir.

11  1984) (finding conclusory allegations unsupported by facts

12  insufficient to state a claim under § 1983).  "The plaintiff must

13  allege with at least some degree of particularity overt acts which

14  defendants engaged in that support the plaintiff's claim."  _Jones_,

15  733 F.2d at 649 (internal quotation omitted).

16      Nevertheless, the court must give a pro se litigant leave to

17  amend his complaint "'unless it determines that the pleading could

18  not possibly be cured by the allegation of other facts.'"  _Lopez v._

19  _Smith_, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting _Doe_

20  _v. United States_, 58 F.3d 494, 497 (9th Cir. 1995)).  Thus, before

21  a pro se civil rights complaint may be dismissed, the court must

22  provide the plaintiff with a statement of the complaint's

23  deficiencies.  _Karim-Panahi_, 839 F.2d at 623-24.  But where

24  amendment of a pro se litigant's complaint would be futile, denial

25  of leave to amend is appropriate.  _See_ _James v. Giles_, 221 F.3d

26  1074, 1077 (9th Cir. 2000).

27

28

**C.   Stating a Claim Under 42 U.S.C. § 1983**

To state a claim under § 1983, the plaintiff must allege facts sufficient to show (1) a person acting "under color of state law" committed the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States.  42 U.S.C.A. § 1983 (West 2003); Shah v. County of Los Angeles, 797 F.2d 743, 746 (9th Cir. 1986).

### III. DEFENDANTS' MOTION TO DISMISS

Defendants Brown, Duarta, Wierzbicky, Pederson, and Contreras move to dismiss Perry's Complaint.  (Mot. Dismiss 1; Def. Contreras Joinder 1.)  Defendants assert Plaintiff failed to exhaust the administrative remedies for his claims.  (Mot. Dismiss Attach. #1 Mem. P. & A. 5-8.)  In addition, they argue that Plaintiff's allegations regarding attempted murder and a violent hate crime should be stricken because Plaintiff cannot initiate criminal charges against them.  (Id. at 8.)  Defendants contend they are immune from a suit for damages against them in their official capacities.  (Id. at 8-9.)  They maintain that Perry's state law claim is barred because he failed to file a tort claim with the Victim's Compensation Government Claim Board.  (Id. at 9-11.)  Finally, Defendants argue that Plaintiff is not entitled to injunctive relief.  (Id. at 11-12.)

**A.   Exhaustion**

**1.   Motion to Dismiss Unexhausted Claims Pursuant to the Unenumerated Portions of Rule 12(b)**

Title 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") states:  "No action shall be brought with respect to

9

prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C.A. § 1997e(a) (West 2003).  The exhaustion requirement applies regardless of the relief sought. Booth v. Churner, 532 U.S. 731, 741 (2001) (citation omitted).

"'[A]n action is "brought" for purposes of § 1997e(a) when the complaint is tendered to the district clerk[]' . . . ."  Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006) (quoting Ford v. Johnson, 362 F.3d 395, 400 (7th Cir. 2004)).  Therefore, prisoners must "exhaust administrative remedies before submitting any papers to the federal courts."  Id. at 1048 (emphasis added).

Section 1997e(a)'s exhaustion requirement creates an affirmative defense.  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  "[D]efendants have the burden of raising and proving the absence of exhaustion."  Id. (footnote omitted).  Defendants in § 1983 actions properly raise the affirmative defense of failure to exhaust administrative remedies through an unenumerated motion to dismiss under Rule 12(b).  Id. (citations omitted).

Unlike motions to dismiss for failure to state a claim for which relief may be granted, "[i]n deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact."  Id. at 1119-20 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988)) (footnote omitted).  Courts have discretion regarding the method they use to resolve such factual disputes.  Ritza, 837 F.2d at 369 (citations omitted).  "A court ruling on a motion to dismiss also may take judicial notice of

1    'matters of public record.'" <u>Hazleton v. Alameida</u>, 358 F. Supp. 2d

2    926, 928 (C.D. Cal. 2005) (citing <u>Lee v. City of Los Angeles</u>, 250

3    F.3d at 688 (citations omitted)).  But "if the district court looks

4    beyond the pleadings to a factual record in deciding the motion to

5    dismiss for failure to exhaust[,] . . . the court must assure that

6    [the plaintiff] has fair notice of his opportunity to develop a

7    record." <u>Wyatt</u>, 315 F.3d at 1120 n.14.

8         "[When] the district court concludes that the prisoner has not

9    exhausted nonjudicial remedies, the proper remedy is dismissal of

10   the claim without prejudice." <u>Id.</u> at 1120 (citing <u>Ritza</u>, 837 F.2d

11   at 368 n.3).

12        **2.   The Administrative Grievance Process**

13        "The California Department of Corrections ["CDC"] provides a

14   four-step grievance process for prisoners who seek review of an

15   administrative decision or perceived mistreatment:  an informal

16   level, a first formal level, a second formal level, and the

17   Director's level." <u>Vaden</u>, 449 F.3d at 1048-49 (citing <u>Brown v.</u>

18   <u>Valoff</u>, 422 F.3d 926, 929-30 (9th Cir. 2005)).  The administrative

19   appeal system can be found in title 15, sections 3084.1, 3084.5,

20   and 3084.6 of the California Code of Regulations.  <u>See</u> <u>Brown</u>, 422

21   F.3d at 929-30 (citing Cal. Code Regs. tit. 15, §§ 3084.1(a),

22   3084.5(a)-(b), (e)(1)-(2), 3084.6(c)).

23        To comply with the CDC's administrative grievance procedure,

24   an inmate must file his grievance at the informal level "within 15

25   working days of the event or decision being appealed . . . ." Cal.

26   Code Regs. tit. 15, § 3084.6(c) (2009); <u>see also</u> <u>Brown</u>, 422 F.3d at

27   929.  An inmate must proceed through all levels of the

28

1  administrative grievance process before initiating a § 1983 suit in

2  federal court.  <u>See Vaden</u>, 449 F.3d at 1051.

3      A prisoner's grievances must be "sufficient under the

4  circumstances to put the prison on notice of the potential claims

5  and to fulfill the basic purposes of the exhaustion requirement."

6  <u>Irvin v. Zamora</u>, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001).

7  Exhaustion serves several important goals, including "allowing a

8  prison to address complaints about the program it administers

9  before being subjected to suit, reducing litigation to the extent

10 complaints are satisfactorily resolved, and improving litigation

11 that does occur by leading to the preparation of a useful record."

12 <u>Jones v. Bock</u>, 549 U.S. 199, 219 (2007) (citing <u>Woodford v. Ngo</u>,

13 548 U.S. 81, 88-91 (2006); <u>Porter v. Nussle</u>, 534 U.S. 516, 524

14 (2002)).

15     **3.   Plaintiff's Failure To Exhaust**

16     Defendants argue that Perry attempted to exhaust his

17 administrative remedies for his dental care claims, but he never

18 alleged that there had been "beatings, property confiscation,

19 institution wide conspiracies, attempted murder, and all other

20 allegations advanced in the complaint."  (Mot. Dismiss Attach. #1

21 Mem. P. & A. 7.)  Defendants explain that Perry filed two

22 grievances regarding dental care at the Director's level, but both

23 were screened out.  (<u>Id.</u>)  One grievance had added a new demand for

24 payment of $5,000,000, and the other was submitted directly to the

25 third level of review in an attempt to bypass prison procedures.

26 (<u>Id.</u>)  Thus, Perry failed to properly exhausted his administrative

27 remedies.  (<u>Id.</u> at 8); Fed. R. Civ. P. 12(b).

28

Perry alleges in his Complaint that he "did everything on a timely basis[.]  [His] appeal form 602 was denied at all 3 levels. [He] sought medical dental help.  [He] was refused treatment time after time . . . ."  (Compl. 8.)  In his first Opposition, Plaintiff declares his statements are true and correct and explains that "[he] exhausted all of [his] administrative remedies . . . ." (Opp'n 1, Mar. 10, 2010.)  In his second Opposition, Perry again declares that his statements are true and correct and argues, "[he] exhausted all of his administrative remedies on or about June 10, 2008 when [he] was [prevented] from seeking dental treatment . . . ."  (Opp'n 1, Mar. 26, 2010.)  Plaintiff reiterates the allegations in his Complaint and asserts that "among the property that was stolen on or about June 10, 2008 was 3 completed appeals forms for [his] dental care, hospital care, [and] assaults . . . ." (Id. at 2.)

### a.   Dental Care Claims

In ruling on Defendants' Motion, the Court may "look beyond the pleadings and decide disputed issues of fact."  Wyatt, 315 F.3d at 1119-20 (citing Ritza, 837 F.2d at 369).  Although Plaintiff did not provide a copy of any 602 with either of his Oppositions, Defendants submitted copies of Perry's grievance and appeals as exhibits to the Declarations of J. Walker, chief of the third level appeal -- health care, and G. Pederson, appeals coordinator at Richard J. Donovan Correctional Facility.[2]  (Mot. Dismiss Attach. #2 Decl. Walker Exs. A-D; id. Attach. #4 Decl. Pederson Exs. A-B.)

---

[2]   Perry claims that prison officials stole his completed grievance forms, but in his Oppositions, he does not explain whether the grievance and appeals Defendants submit along with the Motion to Dismiss are copies of the forms he claims he no longer possesses.  (Opp'n 2, Mar. 26, 2010.)

1    In his informal grievance dated February 21, 2008, Perry
2  alleged that he had filed an emergency dental request form two
3  months earlier and was told he would be re-ducated, but "it [was]
4  two months later and [he has] not been called."[3]  (Mot. Dismiss
5  Attach. #2 Decl. Walker Ex. A at 1.)  Plaintiff explained it "[was]
6  an urgent emergency [because he had] 'pyorrhea of the gums' due to
7  excessive plaque build up over the last ten years."  (Id.)  Perry
8  listed his symptoms as inflamed gums, bleeding during brushing, and
9  foul smelling breath; he described the negative effect his dental
10 problems had on his relationship with cellmates.  (Id.)  Perry
11 concluded by asserting that "[Donovan was] not providing [him]
12 constitutionally adequate dental treatment."  (Id.)  He requested
13 "an Emergency Dental Appointment" and that his teeth be cleaned and
14 that he be provided Penicillin.  (Id.)

15    On March 3, 2008, Plaintiff's grievance form was returned to
16 him after being partially granted; it stated, "You were seen and
17 examined on [February 22, 2008] by the facility dentist; oral
18 hygiene instructions [were] given to you.  You are considered a
19 Dental Priority 3, treatment within one year.  You will be ducated
20 in chronological order for treatment."  (Id.)

21    Perry appealed this decision on March 6, 2008, asserting, "I
22 am totally dissatisfied: last week I was called into the dental
23 office and I was told that I would be re-ducated for a dentist
24 appointment. [My] dental condition is an emergency [and] I need my
25 teeth cleaned immediately."  (Id.)  He complained that the proposed

27    [3]  Appeals Coordinator of Richard J. Donovan Correctional
   Facility, G. Pederson, also submitted a copy of this grievance
28 along with his Declaration.  (Id. Attach. #4 Decl. Pederson Ex. B.)

year delay in treatment was "a convenient method for [Donovan] dental to evade providing [him] emergency treatment." (Id.) Plaintiff also asserted that he had "hoof and mouth disease." (Id.)

At the first formal level, his appeal was reviewed, partially granted, and returned to him on May 13, 2008. (Id. at 2.) The appeal decision reiterated that Perry had been examined on February 22, 2008, and a treatment plan was formulated at that time. (Id.) Plaintiff was again informed that he was categorized as a priority level three and would receive treatment within a year. (Id.) He was also informed, "If you have a dental emergency, contact your supervisor or building officer, or complete a health care service request form (CDC 7362)." (Id.)

Perry was dissatisfied with this response and appealed to the second level of review on June 2, 2008, stating, "[Donovan] medical [and] dental staff['s] continued [refusal] to provide me dental treatment for my serious condition does constitute deliberate indifference [and] I will file a Federal Civil Right[s] Action under U.S.C. § 1983.  You state above [that my] 602 is granted. This is frivolous." (Id.)

His second level appeal was again partially granted and returned to Perry on July 3, 2008. (Id.) In a separate letter containing the appeal response, Plaintiff's initial request and subsequent treatment on February 22, 2008, were referenced, and it was noted that Perry was also "seen and treated on May 21, 2008 and tooth #30 was filled and [he] was instructed to submit a Health Care Service Request Form (CDC 7362) for a comprehensive examination and treatment plan." (Id. Ex. B at 1.)  The appeal

1  response also explained that Perry was "pending an appointment"

2  with the dental facility.  (Id.)  But on June 24, 2008, he was

3  transferred to Folsom.  (Id.)

4       On August 20, 2008, the Office of Third Level Appeals --

5  Health Care sent a letter to Perry explaining it had "received an

6  appeal from [him] and [had] determined that it [did] not comply

7  with appeal procedures . . . and [was] being screened-out and

8  returned . . . ."[4]  (Id. Ex. C. at 1.)  Perry's Director's level

9  appeal was screened out because he "submitted an appeal for Third

10 Level Review that contain[ed] a new request."  (Id.)  The letter

11 stated, "Your new medical issues, request for $5,000,000.00 for

12 pain and suffering, must be submitted on a new CDCR for 602-HC to

13 the Health Appeals Coordinator at your institution for processing."

14 (Id.)  The letter also explained that "[t]o submit your appeal for

15 Third Level review, please line out your request for the

16 $5,000,000.00 for pain and suffering, initial, and return all

17 documentation, including this letter to the Office of Third Level

18 Appeals."  (Id.)

19      On September 10, 2008, the Office of Third Level Appeals --

20 Health Care sent a second letter to Perry explaining it had

21 "received an appeal from [Perry] and [had] determined that it [did]

22 not comply with the appeal procedures . . . and [was] being

23 screened-out and returned to [him] . . . ."  (Id. Ex. D at 1.)

24 Plaintiff was informed that his appeal was incomplete.  (Id.)  The

25

26      [4]  Chief of Inmate Appeals Branch, D. Foston explains that he
   had no record of accepting or rejecting any third level appeal from
27 Perry from April 2, 2008, through the present, but "[t]he Office of
   Third Level Medical Appeals -- Health Care, started receiving and
28 reviewing medical appeals in August of 2008 . . . ."  (Id. Attach.
   #3 Decl. Foston 2, 4; id. Ex. A.)

letter explained, "You have added the new demand for payment of $5,000,000.00 for pain and suffering to your originally submitted appeal.  Please line out on this appeal document your request for $5,000,000.00; initial and return . . .  for continued processing." (Id. (emphasis omitted).)  The letter also stated, "You have submitted a new CDC Form 602.  Please submit this appeal to the Health Care Appeals Coordinator at your institution for review and processing.  If you are still not satisfied after the Second Level of Review, you may then submit your appeal to this office for continued processing."  (Id. (emphasis omitted).)

Thus, Perry completed the informal, first level of appeal, and second level of appeal for his grievance regarding dental care, but his appeals were screened out at the Director's level.  CDC administrative procedures are not properly exhausted until an inmate has pursued a grievance through all available levels of review.  Brown, 422 F.3d at 935; Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Hazleton, 358 F. Supp. 2d at 929 (citations omitted).  Perry could have resubmitted his original appeal to the third level without the additional claim for monetary damages or he could have initiated and pursued through all levels of review a new grievance including both his dental claim and a claim for damages. Instead, he chose to file this lawsuit.  Because Plaintiff did not follow prison grievance policies, the dental care and appended claims are unexhausted.

Existing Ninth Circuit case law directs the district court to dismiss unexhausted claims without prejudice.  Vaden, 449 F.3d at 1051 (citing Wyatt, 315 F.3d at 1120).  But Vaden and Wyatt were decided prior to Woodford.  Since the Supreme Court's decision in

Woodford, it may no longer be appropriate to dismiss Plaintiff's Complaint with leave to amend if it is too late for Perry to properly exhaust administrative remedies.   An inmate must submit his grievance "within 15 working days" of the unacceptable lower level decision.   Cal. Code Regs. tit. 15, § 3084.6(c).   But the letters from the Office of Third Level Appeals -- Health Care do not refer to that deadline.   Although it appears that Plaintiff has exceeded the amount of time available to him, the August 20 and September 10, 2008 letters instructing him on how to cure the deficiencies in his Director's Level appeals do not expressly limit the time in which he may do so.   It is uncertain whether a future attempt by Perry to cure the noted deficiencies will be rejected as untimely.   (See Mot. Dismiss Attach. #3 Decl. Foston 3-4 n.1.) Therefore, Plaintiff's dental care claims should be **DISMISSED WITHOUT PREJUDICE.**

### b.   All Other Claims

Defendants Wierzbicky, Brown, Duarta, Pederson, and Contreras also move to dismiss Perry's Complaint because he has not submitted any grievances against them.   (Mot. Dismiss Attach. #1 Mem. P. & A. 8.)   They explain that the unexhausted grievance regarding dental care does name any of them and is "silent as to any alleged beating, property confiscation, institution wide conspiracies, attempted murder, and all other allegations advanced in his complaint."   (Id. at 7.)

Defendants have provided three declarations asserting that Perry did not submit any grievances naming or referring to Defendants Wierzbicky, Brown, Duarta, Pederson, and Contreras, or alleging the incidents described in the Complaint that occurred on

1  April 2, 17, and June 10, 2008.  (<u>Id.</u> Attach. #2 Decl. Walker 3;

2  Attach. #3 Decl. Foston 3-4; Attach. #4 Decl. Pederson 3; <u>see also</u>

3  Compl. 1, 4-7.)

4       Chief of the Third Level Appeal -- Health Care, Walker,

5  searched for any grievances for the period of April 2, 2008,

6  through June 10, 2008, alleging that "Defendants[] Garcia, Brown,

7  Durta, Wierzbicky, Valdez, Jackson, Pederson, and Contreras, were

8  deliberately indifferent to Perry's safety when they conspired

9  against him and inflicted upon him several retaliatory beatings."

10 (Mot. Dismiss Attach. #2 Decl. Walker 2-3.)  Walker noted the two

11 grievances regarding dental care but concluded that "Plaintiff

12 failed to submit an appeal to this Office regarding injuries

13 through use of force against [Perry] and did not submit any appeals

14 during the complained about time period."  (<u>Id.</u> at 3.)

15      Chief of Inmate Appeals Branch, Foston, also searched for any

16 grievances regarding the relevant time period that named any

17 Defendant for claims "relating to [Perry's] dental treatment,

18 conspiracy, deliberate indifference to his safety, and medical

19 negligence . . . ." (Mot. Dismiss Attach. #3 Decl. Foston 3.)

20 Foston concluded that "Perry [had] no appeals that were rejected

21 between April 2, 2008 and present. . . . [T]he Inmate Appeals

22 Branch [had] not accepted any Third Level appeal from Plaintiff

23 relating to [the claims stated in the Complaint].  Therefore, any

24 claims resulting from said incident are unexhausted."[5]   (<u>Id.</u> at

25 4.)

26

27      [5]  As noted above, during the relevant time period any claims
    regarding medical care would have gone to the Third Level Appeal --
    Health Care rather than the Inmate Appeals Branch.  (<u>Id.</u> at 2.)
28  Even so, Foston searched his records, but the search yielded no
    results.

1    Appeals Coordinator Pederson also searched for any grievances
2  during the relevant time period, naming any Defendant in claims
3  that they "were deliberately indifferent to [Perry's] safety when
4  they conspired against him and inflicted upon him several
5  retaliatory beatings." (Mot. Dismiss Attach. #4 Decl. Pederson 3.)
6  Pederson noted the February 21, 2008 grievance relating to dental
7  care and concluded that "[a] thorough search of our records . . .
8  revealed that Plaintiff did not file an appeal against [Defendants]
9  relating to allegations of deliberate indifference to his safety or
10 excessive force, or injuries from retaliatory beatings." (Id. at
11 3.)

12    Perry attempted to exhaust his administrative remedies
13 regarding inadequate dental care.  He did not, however, mention
14 Defendants by name or reference in his grievance and did not assert
15 the factual allegations that are described in his Complaint.  (Id.
16 Attach. #2 Decl. Walker Exs. A-D; id. Attach. #4 Decl. Pederson
17 Exs. A-B.)  Plaintiff made no charges of "conspiracy to cover up a
18 lawsuit, attempted murder, a violent hate crime, cruel and unusual
19 punishment, [and an] Eighth Amendment rights violation."  (Compl.
20 2-3.)  Perry explains the absence of administrative grievances for
21 these claims with a self-serving statement that he exhausted all of
22 his administrative remedies and that on June 10, 2008, three
23 completed appeal forms were stolen from him.  (See Opp'n 1, Mar.
24 10, 2010; Opp'n 1-2, Mar. 26, 2010.)

25    "[E]xhaustion is not per se inadequate simply because an
26 individual later sued was not named in the grievances."  Jones v.
27 Bock, 549 U.S. 199, 219 (2007).  "Prisoners need comply only with
28 the prison's own grievance procedures to properly exhaust . . . ."

20

1  <u>Griffin v. Arpaio</u>, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing

2  <u>Jones</u>, 549 U.S. at 218).  A prisoner in California is not required

3  to name all defendants in his grievance but must "describe the

4  problem and action requested."  Cal. Code Regs. tit. 15, §

5  3084.2(a) (2006); <u>see also</u> <u>Thorns v. Ryan</u>, No. 07-CV-00218-H (AJB),

6  2009 WL 230035, at *6 (S.D. Cal. Jan. 23, 2009) (citing <u>Lewis v.</u>

7  <u>Mitchell</u>, 416 F. Supp. 2d 935, 941-45 (S.D. Cal. 2005)); <u>Jensen v.</u>

8  <u>Knowles</u>, No. 2:02-cv-02373 JKS P, 2008 WL 5156694, at *4 (E.D. Cal.

9  Dec. 9, 2008) (explaining that a prisoner in California is not

10 required to "expressly name the defendant[]").  "[W]hen a prison's

11 grievance procedures are silent or incomplete as to factual

12 specificity, 'a grievance suffices if it alerts the prison to the

13 nature of the wrong for which redress is sought.'"  <u>Griffin</u>, 557

14 F.3d at 1120 (quoting <u>Strong v. David</u>, 297 F.3d 646, 650 (7th Cir.

15 2002)).

16      Even reading Perry's grievance in the light most favorable to

17 him, the grievance regarding dental care does not describe the

18 "problem and action requested" for other claims in his Complaint or

19 state a claim against these Defendants.  Cal. Code Regs. tit. 15, §

20 3084.2(a); <u>Jones</u>, 549 U.S. at 218; <u>Griffin</u>, 557 F.3d at 1119.

21 Perry has not properly exhausted his administrative remedies for

22 his claims and assertions of conspiracy, attempted murder, a

23 violent hate crime, cruel and unusual punishment, and Eighth

24 Amendment violations alleged in his Complaint, and the Motion to

25 Dismiss should be **GRANTED.**

26      It may no longer be appropriate to dismiss this Complaint with

27 leave to amend if it is too late for Perry to properly exhaust

28 administrative remedies.  <u>Woodford</u>, 548 U.S. at 95.  A prisoner

1   would "have little incentive to comply with the system's procedural
2   rules unless noncompliance carries a sanction." Id.  Plaintiff is
3   in that situation.  Because a grievance against Defendants was not
4   filed within fifteen working days of the action being challenged,
5   any attempt to file it now is untimely.  See Cal. Code Regs. tit.
6   15, § 3084.6(c).

7        Exceptions to the exhaustion requirement are limited.  See
8   Booth, 532 U.S. at 741.  In Booth, the Supreme Court explained,
9   "Thus, we think that Congress has mandated exhaustion clearly
10  enough, regardless of the relief offered through administrative
11  procedures." Id. (citing McCarthy, 503 U.S. at 144) (footnote
12  omitted).  "'Where Congress specifically mandates, exhaustion is
13  required[.]'" Id. (quoting McCarthy, id.)  Booth and Woodford
14  effectively eliminated most exceptions to exhaustion.

15       An inmate must file his grievance "within 15 working days" of
16  the event being appealed.  Cal. Code Regs. tit. 15, § 3084.6(c).
17  Perry's injury and interactions with Defendants occurred between
18  April 2 and June 10, 2008, over two years ago; Plaintiff no longer
19  has time to exhaust his administrative remedies against Defendants.
20  See id.; (Compl. 1.)  There are no applicable exceptions to the
21  exhaustion requirement.  For all these reasons, Plaintiff's
22  Complaint against Defendants Wierzbicky, Brown, Duarta, Pederson,
23  and Contreras, none of whom appear to be involved in Plaintiff's
24  dental care, should be **DISMISSED WITHOUT LEAVE TO AMEND.**

25  **B.   Motion to Strike Allegations of Criminal Conduct**

26       Perry's Complaint asserts that Defendants Wierzbicky, Jackson,
27  Brown, Duarta, and Pederson attempted to murder him and committed a
28  violent hate crime against him.  (Compl. 2-3.)  This assertion is

detailed in the remainder of his Complaint.  (Id. at 4-7.)
Defendants contend that Plaintiff's allegations regarding attempted
murder and a violent hate crime should be stricken because
"individuals cannot initiate criminal charges in civil court
. . . ."  (Mot. Dismiss Attach. #1 Mem. P. & A. 8 (citing Fed. R.
Civ. P. 2).)  They do not cite the specific page and line
references they seek to strike.

     It is well established that a private citizen has no authority
to initiate a federal criminal prosecution; that power is vested
exclusively in the executive branch.  See Morrison v. Olson, 487
U.S. 654, 705 (1988); United States v. Nixon, 418 U.S. 683, 693
(1974); Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (stating
that only the United States as prosecutor can bring a criminal
complaint under RICO).  Additionally, § 1983 allows a prisoner to
file a civil action where he has been deprived "any rights,
privileges, or immunities secured by the Constitution and laws
. . . ."  42 U.S.C.A. § 1983.  Attempted murder and a violent hate
crime are criminal charges, not properly part of a civil action.
See Cal. Penal Code § 189 (West Supp. 2010); id. §§ 422.75, 664
(West 2008).

     But Defendants read Perry's Complaint too narrowly.  "To
prevail on this motion to strike, the movant must clearly show that
the challenged matter 'has no bearing on the subject matter of the
litigation and that its inclusion will prejudice the defendants.'"
2 James Wm. Moore et al., Moore's Federal Practice § 12.37[3], at
12-129 (3d ed. 2010) (footnote omitted).  The summary references to
"attempted murder" and "a violent hate crime" correspond to factual
allegations in the Complaint.  (See Compl. 4-7.)  A plaintiff's

reference to a "hate crime" in a civil rights complaint is not

uncommon.  (See, e.g., Hubbard v. Folsom State Prison, No. Civ. S-

07-2562 MCE DAD PS (E.D. Cal. Mar. 7, 2008) (noting that "reference

to hate crimes suggests that [Plaintiff] may be attempting to

allege civil rights violations . . . .")  In another context, the

court denied a motion to strike a discussion of an organized crime

figure and alleged illegal activity of some defendants.  See First

City Nat'l Bank & Trust Co. v. FDIC, 730 F. Supp. 501, 514

(E.D.N.Y. 1990).  Thus, Defendants' request to strike the

allegations in Plaintiff's Complaint that refer to attempted murder

and a violent hate crime is **DENIED**.  See Brace v. IBM, 953 F. Supp.

561, 563 n.1 (D. Vt. 1997) (noting that motion to strike is

nondispositive and within the pretrial authority of magistrate

judges).

**C.    Immunity**

**    1.    Eleventh Amendment Immunity**

Defendants Wierzbicky, Brown, Duarta, Pederson, and Contreras

argue that they "are immune to suit for damages in their official

capacity."  (Mot. Dismiss Attach. #1 Mem. P. & A. 8-9.)  The

Eleventh Amendment grants the states immunity from private civil

suits.  U.S. Const. amend. XI; Henry v. County of Shasta, 132 F.3d

512, 517 (9th Cir. 1997), as amended, 137 F.3d 1372 (9th Cir.

1998).  "[A] suit against a state official in his or her official

capacity is not a suit against the official but rather is a suit

against the official's office."  Will v. Mich. Dep't of State

Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S.

464, 471 (1985)).

Plaintiff makes claims against all Defendants in their individual and official capacities. (Compl. 2-3.) He seeks injunctive and monetary relief from each. (<u>Id.</u> at 9.) Plaintiff's claim for monetary damages is properly alleged against Defendants in their individual capacities. <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985). But the claims against them in their official capacities are claims against the State of California, which is absolutely immune from liability for damages. <u>See</u> <u>Brandon</u>, 469 U.S. at 471.

Accordingly, Defendants are entitled to sovereign immunity, and their Motion to Dismiss monetary claims against them in their official capacities should be **GRANTED WITHOUT LEAVE TO AMEND**. If Perry is permitted to proceed with his Complaint, he may only seek monetary damages from Defendants in their individual capacities.

**D.   California Tort Claims Act**

Defendants assert that Perry's allegation regarding stolen property is barred because it is a supplemental state law claim, and Plaintiff failed to properly file a tort claim with the Victim Compensation and Government Claims Board. (Mot. Dismiss Attach. #1 Mem. P. & A. 9.) Defendants have provided a copy of a January 23, 2009 letter addressed to Perry from the Victim Compensation and Government Claims Board which explains that Plaintiff's claim was not presented to the Board until after the six-month claim filing period had expired. (<u>Id.</u> Ex. A 1.) Attached to the letter is Perry's claim form which was received by the Board on January 16, 2009; Plaintiff alleges that he was transferred from Donovan to Folsom, but he never received his property. (<u>Id.</u> at 6.) Perry's claim form also included two grievance forms asserting that he was

transferred on June 23, 2008, but he never received his property after transfer. (Id. at 7, 9.)

When adjudicating a supplemental state law claim, this Court must apply state substantive law. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). Under the California Tort Claims Act, filing a tort claim within the time and in the manner prescribed by statute is a prerequisite to bringing a lawsuit against any state employee or agency. See Cal. Gov't Code §§ 905.2, 911.2 (West Supp. 2010); Cal. Gov't Code §§ 945.4, 950.2 (West 1995). A tort claim must be filed within six months of when the cause of action accrues. Cal. Gov't Code § 911.2. This applies to "injur[ies] resulting from an act or omission [of a public employee] in the scope of his employment as a public employee . . . ." Cal. Gov't Code § 950.2.

In his Complaint, Perry alleges that Defendants stole his property on June 10, 2008. (Compl. 6-7.) In his claim to the Victim Compensation and Government Claims Board, Plaintiff asserts his property was never returned to him after his transfer on June 23, 2008. (Mot. Dismiss Attach. #1 Mem. P. & A. Ex. A 6-7, 9.) His tort claim was received by the Board on January 16, 2009, over six months after either June 10 or 23, 2008. (Id. at 1, 6.) Perry has not provided any evidence that he submitted a tort claim within the time and in the manner prescribed by statute. Thus, he did not fulfill a prerequisite to bringing his state claim. Defendants' Motion to Dismiss Plaintiff's supplemental state law claim should be **GRANTED WITHOUT LEAVE TO AMEND.**

1   **E.    Injunctive Relief**

2        Plaintiff seeks an injunction requiring Defendants "to stay

3   1000 yards away from [him], [and] reimburse [him] $500,000 for all

4   [his] property that R.J. Donovan officials destroyed."  (Compl. 9.)

5        Defendants Wierzbicky, Brown, Duarta, Pederson, and Contreras

6   assert that Perry's Complaint "does not meet the standard for

7   entitlement to injunctive relief . . . ."  (Mot. Dismiss Attach. #1

8   Mem. P. & A. 11.)  They explain that an injunction is not necessary

9   because Perry has been transferred to Folsom State Prison.  (Id.)

10  "[M]oreover, the remainder of plaintiff's request is a demand for

11  monetary compensation, in addition to the compensatory and punitive

12  damages he demands."  (Id.)  Defendants also contend that Perry

13  "fails to allege any ongoing or prospective violations of his

14  constitutional rights, but instead seeks compensation for past

15  wrongs . . . ."  (Id.)

16       Injunctive relief is an equitable remedy that is appropriate

17  where the plaintiff can show he will suffer a "likelihood of

18  substantial and immediate irreparable injury" if an injunction is

19  not granted.  Hodgers-Durgin v. De La Vina, 199 F.3d 1037, 1049

20  (9th Cir. 1999) (en banc) (quoting City of Los Angeles v. Lyons,

21  461 U.S. 95, 111 (1983)); see also Doran v. Salem Inn, Inc., 422

22  U.S. 922, 932 (1975).

23       The traditional criteria for granting an injunction are "'(1)

24  a strong likelihood of success on the merits; (2) the possibility

25  of irreparable injury to the plaintiffs if injunctive relief is not

26  granted; (3) a balance of hardships favoring the plaintiffs; and

27  (4) advancement of the public interest.'"  Mayweathers v. Newland,

28  258 F.3d 930, 938 (9th Cir. 2001) (quoting Textile Unltd., Inc. v.

27                                          09cv622 LAB (RBB)

1  A.BMH & Co., 240 F.3d 781, 786 (9th Cir. 2001).  Under the

2  alternative test for granting injunctive relief, the Court examines

3  whether "serious questions are raised and the balance of hardships

4  tips sharply in favor of the moving party."  Stuhlbarg Intern.

5  Sales Co. v. John D. Brush & Co., 240 F.3d 832, 840 (9th Cir. 2001)

6  (citing Dr. Seuss Enters. v. Penguin Books USA, Inc., 109 F.3d

7  1394, 1397 n.1 (9th Cir. 1997)).  Under either measure, this

8  Plaintiff is not entitled to injunctive relief.

9       As Defendants correctly observe, Perry's remedies are limited

10  by the Prison Litigation Reform Act.  (Mot. Dismiss Attach. #1 Mem.

11  P. & A. 11-12.)  Section 3626(a)(1) of the Act states, "Prospective

12  relief in any civil action with respect to prison conditions shall

13  extend no further than necessary to correct the violation of the

14  Federal right of a particular plaintiff or plaintiffs."  18

15  U.S.C.A. § 3626(a) (West 2006).  This statutory restriction limits

16  available relief.

17       Plaintiff requests an injunction preventing Defendants from

18  coming within one thousand yards of him.  (Compl. 9.)  The Court

19  does not have jurisdiction to issue wide-reaching injunctions that

20  extend beyond any actual injury suffered by a plaintiff.  Lewis,

21  518 U.S. at 357.  "The remedy must of course be limited to the

22  inadequacy that produced the injury in fact that the plaintiff has

23  established."  Id.  (citing Missouri v. Jenkins, 515 U.S. 70, 88,

24  89 (1995)).

25       Perry has also failed to demonstrate that he may suffer an

26  imminent injury.  In City of Los Angeles v. Lyons, 461 U.S. at 101-

27  02, the Court explained that "[t]he plaintiff must show that he

28  'has sustained or is immediately in danger of sustaining some

28

direct injury' as a result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'"  Plaintiff is no longer housed at Donovan, the location where the Defendants are employed. (Compl. 2-5.)  Thus, he has failed to demonstrate an imminent injury.

Plaintiff is not entitled to injunctive relief unless he can show that he will suffer substantial and immediate irreparable injury for which there is an inadequate remedy at law.  Easyriders Freedom F.I.G.H.T. v. Hannigan, 92 F.3d 1486, 1495 (9th Cir. 1996). "Under any formulation of the test [for injunctive relief], plaintiff must demonstrate that there exists a significant threat of irreparable injury."  Oakland Tribune, Inc. v. Chronicle Publ'g Co., 762 F.2d 1374, 1376 (9th Cir. 1985).  Perry has made no showing of irreparable harm.  In addition, because he is no longer housed at Donovan, Plaintiff lacks standing to seek injunctive relief directed at these Defendants.

Additionally, "[i]t is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."  Morales v. Trans World Airlines, Inc., 504 U.S. 374, 381 (1992) (quotations omitted) (citing O'Shea v. Littleton, 414 U.S. 488, 499 (1974); Younger v. Harris, 401 U.S. 37, 43-44 (1971)).  Perry seeks compensation as part of his request for an injunction; he has a remedy at law to recover monetary damages.  Thus, equitable relief is not appropriate.

09cv622 LAB (RBB)

Nevertheless, Rule 12(b)(6) does not provide for striking prayers for relief, and Rule 12(f) does not apply to Perry's request for injunctive relief.  At this stage, Defendants' arguments are premature.  If Plaintiff prevails on any claim, the parties may then litigate the appropriate remedy.  <u>See, e.g.</u>, <u>Mariscal v. Aqua Supreme</u>, No. C 09-3279 JF(RS), 2009 U.S. Dist. LEXIS 121033, at *13 (N.D. Cal. Dec. 30, 2009).  For all these reasons, Defendants' request to strike Perry's prayer for injunctive relief is **DENIED**.

### IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Plaintiff's Complaint for failure to exhaust administrative remedies should be **GRANTED**.  Perry's claims regarding inadequate dental care should be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND,** but Perry's other claims relating to conspiracy, attempted murder, a violent hate crime, cruel and unusual punishment, and Eighth Amendment violations should be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND.**

Additionally, Defendants' request to strike the allegations regarding attempted murder and a violent hate crime as well as Plaintiff's claim for injunctive relief should be **DENIED**. Defendants' Motion to Dismiss monetary claims against them in their official capacities as well as Plaintiff's supplemental state law claim regarding his property should also be **GRANTED WITHOUT LEAVE TO AMEND.**

This Report and Recommendation will be submitted to the United States District Court judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written

30

1   objections with the Court and serve a copy on all parties on or

2   before August 16, 2010.  The document should be captioned

3   "Objections to Report and Recommendation."  Any reply to the

4   objections shall be served and filed on or before August 30, 2010.

5   The parties are advised that failure to file objections within the

6   specified time may waive the right to appeal the district court's

7   order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

8        **IT IS SO ORDERED.**

9

10  DATE:  July 16, 2010

11                                    RUBEN B. BROOKS
                                      United States Magistrate Judge

12  cc:  Judge Burns
         All Parties of Record

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28